**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| RYAN O'DELL, | : |
| | : |
|     Plaintiff, | : Civil Action No. 22-cv-2322 |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| MERITOR, INC., WILLIAM R. NEWLIN, | : **SECURITIES EXCHANGE ACT OF** |
| CHRIS VILLAVARAYAN, STEVEN | : **1934** |
| BERINGHAUSE, JAN A. BERTSCH, | : |
| RODGER L. BOEHM, IVOR J. EVANS, | : **JURY TRIAL DEMANDED** |
| ELIZABETH A. FESSENDEN, FAZAL | : |
| MERCHANT, THOMAS L. PAJONAS, and | : |
| LLOYD G. TROTTER, | : |
| | : |
|     Defendants. | : |

---

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.    This is an action brought by Plaintiff against Meritor, Inc. ("Meritor or the "Company") and the members Meritor's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Meritor by affiliates of Cummins Inc. (" Cummins").

2.    Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on March 21, 2022 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby the Rose NewCo Inc. ("Merger Sub"), a wholly-owned subsidiary of Cummins, will merge with and into Meritor with Meritor surviving as a wholly-owned subsidiary of Cummins (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on February 21, 2022 (the "Merger Agreement"), each Meritor stockholder will receive $36.50 in cash (the "Merger Consideration") for each Meritor share owned.

1. As discussed below, Defendants have asked Meritor's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisors, J.P. Morgan Securities LLC ("J.P. Morgan") in support of its fairness opinion.

2. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

3. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Meritor's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

5. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

6. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

7. Plaintiff is, and has been at all relevant times, the owner of Meritor stocks and has held such stocks since prior to the wrongs complained of herein.

8. Individual Defendant William R. Newlin has served as a member of the Board since July 2003 and Non-Executive Chairman since December 2021.

9. Individual Defendant Chris Villavarayan has served as a member of the Board since March 2021 and is the Company's President and Chief Executive Officer.

10. Individual Defendant Steven Beringhause has served as a member of the Board since December 2019.

11. Individual Defendant Jan A. Bertsch has served as a member of the Board since September 2016.

12. Individual Defendant Rodger L. Boehm has served as a member of the Board since December 2017.

13. Individual Defendant Ivor J. Evans has served as a member of the Board since May 2005.

14. Individual Defendant Elizabeth A. Fessenden has served as a member of the Board since 2021.

15. Individual Defendant Fazal Merchant has served as a member of the Board since 2020.

16. Individual Defendant Thomas L. Pajonas has served as a member of the Board since September 2013.

17. Individual Defendant Lloyd G. Trotter has served as a member of the Board since January 2015.

18. Defendant Meritor is an Indiana corporation and maintains its principal offices at 2135 West Maple Road, Troy, Michigan 48084. The Company's stock trades on the New York Stock Exchange under the symbol "MTOR."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Individual Defendants" or the "Board."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**A.    The Proposed Transaction**

21. Meritor designs, develops, manufactures, markets, distributes, sells, services, and supports integrated systems, modules, and components in North America, South America, Europe, and the Asia Pacific. It operates through two segments, Commercial Truck, and Aftermarket and Industrial. The Company offers axles, including front steer and rear drive axles for medium- and heavy-duty commercial vehicles; heavy-duty trailer axles; suspension modules and brake products

comprising drum and disc brakes; universal joints and driveline components; trailer air suspension systems and products; transfer cases and drivelines; and advanced suspension modules for use in light-, medium- and heavy-duty military tactical wheeled vehicles. It also provides air brakes, such as cam drum, wedge drum, and air disc brakes, as well as wheel-end components, including hubs, drums, and rotors to medium- and heavy-duty commercial vehicle manufacturers; and electric drive systems comprising electric motors and inverters, power electronics, battery pack, electrified accessories, and related software and controls for terminal tractors and medium and heavy-duty trucks and buses. In addition, the Company sells other complementary products, including third-party and private label items, which include brake shoes and friction materials; automatic slack adjusters; yokes and shafts; wheel-end hubs and drums; ABS and stability control systems; shock absorbers and air springs; and air brakes. Meritor, Inc. sells its products under the Meritor, Euclid, Trucktechnic, US Gear, AxleTech, and Mach brands primarily to original equipment manufacturers, their parts marketing operations, and their dealers, as well as other independent distributors and service garages in the aftermarket industry. The Company was formerly known as ArvinMeritor, Inc. and changed its name to Meritor, Inc. in March 2011. Meritor, Inc. was founded in 1909 and is headquartered in Troy, Michigan.

22. On February 22, 2022, the Company and Cummins jointly announced the Proposed Transaction:

> Columbus, Indiana and Troy, Michigan (Feb. 22, 2022) – Cummins Inc. (NYSE: CMI) and Meritor, Inc. (NYSE: MTOR) today announced that they have entered into a definitive agreement under which Cummins will acquire Meritor, a global leader of drivetrain, mobility, braking, aftermarket and electric powertrain solutions for commercial vehicle and industrial markets. Under the terms of the agreement, Cummins will pay $36.50 in cash per Meritor share, for a total transaction value of approximately $3.7 billion, including assumed debt and net of acquired cash.

"The acquisition of Meritor is an important milestone for Cummins. Meritor is an industry leader, and the addition of their complementary strengths will help us address one of the most critical technology challenges of our age: developing economically viable zero carbon solutions for commercial and industrial applications," said Tom Linebarger, Chairman and CEO, Cummins. "Climate change is the existential crisis of our time and this acquisition accelerates our ability to address it. Our customers need economically viable decarbonized solutions.

"In addition, our communities and our planet depend on companies like Cummins to invest in and develop these solutions," Linebarger added. This acquisition adds products to our components business that are independent of powertrain technology, and by leveraging our global footprint we expect to accelerate the growth in Meritor's core axle and brake businesses. There is also a compelling financial case for this acquisition, with significant synergies expected in SG&A, supply chain operations and facilities optimization."

"This agreement with Cummins builds on Meritor's track-record of outstanding performance and service to our customers. Our offerings will continue to play an important, strategic role as commercial vehicles transform to become electric and autonomous," said Chris Villavarayan, CEO and President of Meritor. "At closing, Meritor shareholders will receive immediate value at a compelling 48% premium to the Meritor trading price as of Feb. 18, 2022, and customers will benefit from enhanced capabilities in technology and the ability to accelerate investment in axle and brake development and EV adoption. Our global team members and their commitment to excellence helped make this transaction possible and will fuel our innovations as we embark on this next chapter in our longstanding legacy."

**Strategic Rationale**

Meritor is an industry leader in axle and brake technology. The integration of Meritor's people, technology and capabilities will position Cummins as one of the few companies able to provide integrated powertrain solutions across combustion and electric power applications. This is the right time to pursue this combination as demand for decarbonized solutions accelerates. Cummins believes eAxles will be a critical integration point within hybrid and electric drivetrains. By accelerating Meritor's investment in electrification and integrating development within its New Power business, Cummins expects to deliver market-leading solutions to global customers.

> Meritor has a legacy dating back more than 110 years. The company, which is headquartered in Troy, MI, has more than 9,600 employees serving commercial truck, trailer, off-highway, defense, specialty and aftermarket customers around the world.
>
> The acquisition of Meritor is expected to be immediately accretive to Cummins' adjusted EPS and is expected to generate annual pre-tax run-rate synergies of approximately $130 million by year three after closing. Cummins intends to finance the transaction using a combination of cash on the company's balance sheet and debt and remains committed to maintaining its strong credit ratings.
>
> The Board of Directors of Meritor has unanimously approved the agreement with Cummins and recommends that Meritor shareholders vote in favor of the transaction at the Special Meeting of Shareholders to be called in connection with the transaction. The transaction, which is subject to customary closing conditions and receipt of applicable regulatory approvals and Meritor shareholder approval, is expected to close by the end of the calendar year.
>
> Cummins will <u>hold a call with analysts and investors at 9:30 AM EST</u> today to discuss the benefits of this transaction. Participating in that call will be Tom Linebarger, Chairman and CEO of Cummins, and Mark Smith, Cummins' Chief Financial Officer and Chris Villavarayan, CEO and President of Meritor.
>
> Morgan Stanley & Co. LLC is serving as financial advisor to Cummins and Mayer Brown is serving as legal advisor. J.P. Morgan Securities LLC is serving as financial advisor to Meritor and Wachtell, Lipton, Rosen & Katz is serving as legal advisor.

\* \* \*

23.     The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Meritor's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

B.      **The Materially Incomplete and Misleading Proxy Statement**

24.     On March 21, 2022, Meritor filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's

stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

25. The Proxy Statement fails to provide material information concerning financial projections by Meritor management and relied upon by J.P. Morgan in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and J.P. Morgan with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Meritor management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

26. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA and Unlevered

Free Cash Flow, but fails to provide line items used to calculate the metrics and/or a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

27. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

28. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

29. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement,

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

30. With respect to J.P. Morgan's *Public Trading Multiples* analysis, the Proxy Statement fails to disclose: (i) each comparable company's firm value; (ii) the Adjusted EBITDA of each comparable company; and (iii) the basis for choosing the multiple reference range of 4.50x to 7.00x for FV/2022E Adjusted EBITDA and the multiple reference range of 4.00x to 6.50x for FV/2023E Adjusted EBITDA.

31. With respect to J.P. Morgan's *Selected Transactions Analysis*, the Proxy Statement fails to disclose the individual financial metrics for the transactions observed by J.P. Morgan in the analysis, including: (i) the consideration paid in each transaction selected; (ii) each target company's Adjusted EBITDA; and (iii) the basis for choosing the multiple reference range of 5.75x to 8.75x for FV/LTM Adjusted EBITDA.

32. With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the range of terminal values of Meritor; (ii) line items used to calculate the Company's projected unlevered free cash flows for the three fiscal quartered ending October 2, 2022 through fiscal year 2025; (iii) the inputs and assumptions underlying the use of a range of perpetuity growth rates of 1.0% to 2.0%; (iv) the inputs and assumptions underlying the use of the range of discount rates of 9.75% to 10.75%; and (v) the estimated weighted average cost of capital for the Company.

33. With respect to J.P. Morgan's *Analyst Price Targets* analysis, the Proxy Statement fails to disclose: (i) the equity research analysts observed and (ii) the price targets published by each analyst.

34. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

35. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

37. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

11

38. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

39. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

40. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

41. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42. The Individual Defendants acted as controlling persons of Meritor within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Meritor, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Meritor, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

43. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

44. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Meritor, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

45. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

46.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

47.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

48.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.  Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 22, 2022  **MELWANI & CHAN LLP**

By:  /s/
Gloria Kui Melwani (GM5661)
1180 Avenue of Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*